| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:12-cr-00005 |
| | ) | Chief Judge Haynes |
| | ) | |
| RONALD W. PAUL | ) | |
| | ) | |

## MEMORANDUM

On May 16, 2012, a federal grand jury indicted Defendant, Ronald W. Paul, on allegations that Defendant violated the Sex Offender Registration Notification Act ("SORNA"), 42 U.S.C. § 16901 et seq..

Before the Court is Defendant's motion to dismiss the indictment, (Docket Entry No. 22), contending, in sum: (1) that Defendant's state court judgment does not require Defendant to register as a sex offender; (2) that federal law does not impose a legal duty to register apart from the state duty to register; and (3) that if Defendant had a legal duty to register, his notice was insufficient. Id. at 3-4. The Government opposes this motion, (Docket Entry No. 27), asserting that the Tennessee trial court lacked the authority to waive Defendant's obligation to register as a sex offender under SORNA and Tennessee law.

For the reasons stated below, the Court concludes that Defendant's motion to dismiss the indictment should be denied. Under SORNA and Tennessee's sex offender registry, Defendant owed a legal duty to register and his state court judgment did not relieve Defendant of that duty.

## A. Factual Background

In 1995, a Robertson County, Tennessee jury convicted Defendant of one count of aggravated rape, three counts of rape, and two counts of sexual battery. State v. Paul, No. 01C01-9511-CC00358, 1997 WL 578969, at *1 (Tenn. Crim. App. Sept. 19, 1997). A Robertson County criminal court judge sentenced Defendant to thirty-two years in the Tennessee Department of Corrections. Id. In 1997, Defendant appealed his conviction to the Tennessee Court of Criminal Appeals only on the issue of testimony identifying Defendant as the sex offender. Id. The Tennessee appellate court affirmed Defendant's conviction based upon "[t]he overwhelming evidence in support of th[e] verdict includ[ing] the incriminating statement from a taped phone conversation between the victim and the [Defendant]." Id.

In 1999, Defendant filed a state post-conviction petition with claims of ineffective assistance of counsel. Paul v. State, 75 S.W.3d 926, 928 (Tenn. Crim. App. 2001). The Robertson County criminal court dismissed Defendant's petition for untimeliness, but the Tennessee Court of Criminal Appeals reversed the dismissal. Id. Subsequently, the state trial court granted Defendant a delayed direct appeal upon finding ineffective assistance of counsel, but dismissed Defendant's other claims for post-conviction relief. State v. Paul, No. M2002-00810-CCA-R3-CD, 2003 WL 716269, at *1 (Tenn. Crim. App. Mar. 3, 2003). In 2003, the Tennessee appellate court dismissed Defendant's direct appeal for lack of jurisdiction. Id. at *3.

On March 27, 2007, the State of Tennessee and Defendant entered into a plea agreement that reduced Defendant's sentence to "time served" in exchange for foregoing pursuit of his post-conviction petition proceedings. (Docket Entry No. 22). Defendant's 2007 judgment stated, in relevant part:

> All fines and costs waived. It is the intent of the parties that this sentence is effectively a 'time served' sentence and the defendant is not subject to probation/parole status. Further, the defendant shall not be under community supervision for life pursuant to [Tenn. Code Ann.] 39-13-524 as this offense was not committed on or after July 1, 1996; **nor shall defendant be required to comply w/ the sexual offender registry**. Counts 1 thru 5 are dismissed in settlement.

(Docket Entry No. 22-1) (emphasis added).

After his release from custody, Defendant registered with the sex offender registry in Tennessee under the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004, Tenn. Code Ann. § 40-39-201 et seq.. (Docket Entry No. 22 at 2).

> [Defendant] signed copies of a Tennessee form indicating that he understood the requirements of the sex offender registry on July 17, 2006; on February 24, 2007; on May 9, 2007; on June 28, 2007; on April 1, 2008; on June 11, 2008; on August 29, 2008; on December 12, 2008; and on March 9, 2009. The form provided information only about the Tennessee sex offender registry. None of the forms mentioned SORNA or any federal registration requirement. [Defendant] continued to voluntarily comply with the Tennessee sex offender registry until – allegedly between March 31, 2011, and May 5, 2011, – [Defendant] changed residences without updating his registration.

Id.

On May 16, 2012, a federal grand jury indicted Defendant on allegations that Defendant violated SORNA "between on or about March 31, 2011, and on or about May 5, 2011 . . . [by] travel[ing] in interstate commerce and [] knowingly fail[ing] to register in Tennessee as required." (Docket Entry No. 1).

### B. Conclusions of Law

In 2006, Congress enacted the federal Sex Offender Registration Notification Act, 42 U.S.C. § 16901 et seq.. SORNA "imposes an obligation on a sex offender to 'register, and keep the

registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.'" United States v. Felts, 674 F.3d 599, 602 (6th Cir. 2012) (citing 42 U.S.C. 16913(a)). The purpose of SORNA was to "creat[e] a national system for the registration of sex offenders." Felts, 674 F.3d at 602 (citing United States v. Ultesch, 596 F.3d 302, 306 (6th Cir. 2010)). Yet, Congress elected to implement SORNA by "direct[ing] all states and the District of Columbia to create local registries that comply with specific national standards." Felts, 674 F.3d at 602.

Under SORNA, a sex offender must update the sex offender registry in his state "not later than 3 business days after each change of name, residence, employment, or student status." 42 U.S.C. § 16913(a). On February 27, 2007, the United States Attorney General promulgated a regulation that applies SORNA's registration requirements to persons convicted before July 27, 2006. Tennessee has substantially implemented SORNA. Utesch, 596 F.3d at 311. In Tennessee, SORNA's registration requirements apply to pre-Act offenders as of August 1, 2008. Id.

The Defendant contends that "[t]he only way SORNA can apply to [him] would be if somehow after August 2, 2008, [Defendant] had a federal duty to register as a sex offender that was separate and independent from his state duty to register as a sex offender." (Docket Entry No. 22 at 3). SORNA imposes a distinct federal duty upon the Defendant to register and Defendant's state court judgment did not "absolve" him of the federal registration requirement. See United States v. Morales, 258 F.R.D. 401, 405 (E.D. Wash. 2009). "SORNA creates a federal duty to register that is independent of the state duty to register, and . . . the federal duty can be met by registering with the state" regardless of the state's actual requirements or implementation of SORNA. Id. Accordingly, "Defendant's obligation to register [is] triggered by the enactment of [SORNA]; it is

4

not contingent upon a green light from the [State]." <u>United States v. Crum</u>, No. CR08-255RSL, 2008 WL 4542408, at *2 (W.D. Wash. Oct. 8, 2008).

Moreover, Tennessee law recognizes that "[r]epeat sexual offenders, sexual offenders who use physical violence and sexual offenders who prey on children are violent sexual offenders who present an extreme threat to the public safety" and "[i]t is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses." Tenn. Code Ann. § 40-39-201. There are not any statutory exceptions to the registry requirement under Tennessee law unless the sex offender is incarcerated. Tenn. Code Ann. § 40-39-203. Section 40-39-203 of the Tennessee Code Annotated expressly requires sex offenders to register with the Tennessee sex offender registry. Tenn. Code Ann. § 40-39-203.

Defendant next argues that his 2007 Tennessee trial court judgment absolved him of any registration requirement. Yet, the Tennessee statute does not provide any exceptions to Tennessee's sex offender registration requirement. As such, a court cannot create an exception. The Tennessee Constitution provides that "[n]o person or persons belonging to [the Legislative, Judicial, or Executive" departments shall exercise any of the powers properly belonging to either of the others . . . ." Tenn. Const. Art. II, §§ 2. "Under the Tennessee Constitution, the legislative department is empowered to make, order, and repeal the laws while the judicial department is empowered to interpret and apply the laws." See <u>Caudill v. Foley</u>, 21 S.W.3d 203, 209 (Tenn. Ct. App. 1999). Only the Tennessee General Assembly possesses the power to create a statutory exemption to the statutory registry requirement. Accordingly, Defendant's Tennessee trial court judgment does not absolve him of the legal duty to register under SORNA.

Finally, in a supplemental filing (Docket Entry No. 25), Defendant cites <u>United States v.</u>

Starnes, No. 11-3446, 2012 WL 4372560 (6th Cir. Sept. 26, 2012). In Starnes, the Sixth Circuit considered the power of the executive branch to disregard a judicial order regarding a defendant's post-release condition. Here, the circumstances are distinguishable. The Tennessee judiciary lacked the authority to create an exception to a statute where the Tennessee legislature did not provide for any exceptions. Accordingly, the Court concludes that Defendant has a duty to register as a sex offender with the Tennessee sex offender registry, as required under SORNA.

Defendant alternatively contends that he lacked the necessary notice to trigger his duty to register under SORNA. (Docket Entry No. 22 at 3-4). A sex offender is "adequately notified" of the duty to register under SORNA when he has notice of his state duty to register. United States v. Hann, 574 F. Supp.2d 827, 835-36 (M.D. Tenn. 2008). Here, Defendant clearly learned of his duty to register after he was released from custody and registered with the Tennessee sex offender registry many times prior to the indictment.

For these reasons, the Court concludes that the Defendant's motion to dismiss the indictment should be denied.

An appropriate Order is filed herewith.

**ENTERED** this 25th day of October, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court